# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **LINDA D. AKERS,** | ) | |
| Plaintiff, | ) | Case No. 1:04CV00016 |
| v. | ) | **OPINION** |
| **JO ANNE B. BARNHART,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| Defendant. | ) | |

In this social security case, I affirm the final decision of the Commissioner.

## *I. Background.*

Linda D. Akers filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claims for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under titles II and XVI of the Social Security Act, 42 U.S.C.A. §§ 401-433, 1381-1383d (West 2003 & Supp. 2005) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

My review is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists,

this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Id.*

Akers applied for benefits on April 25, 2002, alleging disability since February 23, 2001, and received a hearing before an administrative law judge ("ALJ") on September 8, 2003. By decision dated September 25, 2003, the ALJ found that the plaintiff was not disabled within the meaning of the Act. The Social Security Administration's Appeals Council denied review, and the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed the issues, and the case is ripe for decision.

## II. Facts.

Akers was forty-six years old at the time of the ALJ's unfavorable decision, making her a "younger-aged" individual. 20 C.F.R. §§ 404.1563(c), 416.963(c) (2004). Akers received a General Equivalency Diploma and attended a business accounting college for two years. (R. at 18.) She has worked as a cashier, receptionist, bookkeeper, waitress and customer service representative. (R. at 20.)

Akers claims disability due to depression and anxiety in culmination with other impairments, including back pain, migraine headaches, carpal tunnel syndrome in both hands, and endometriosis. The plaintiff has not engaged in substantial gainful activity since February 23, 2001, the alleged onset date of disability.

In determining whether Akers is eligible for benefits, the ALJ reviewed medical records from Wythe County Community Hospital; Carilion Family Medicine; Paul Morin, M.D.; Bluefield Regional Medical Center; Bland County Medical Clinic; Sheila C. Wendler, M.D.; J. Judson Booker, M.D.; and State Agency expert Hugh Tenison, Ph.D.

Based upon the evidence, the ALJ determined that the plaintiff is unable to return to past relevant work, but has undiminished exertional capacity. The ALJ determined that, given the plaintiff's anxiety and depression, she should avoid close interaction with the public and tasks that are more than mildly stressful. Based upon the testimony of a vocational expert ("VE"), the ALJ found that there existed a significant number of jobs in the national economy which the plaintiff could perform.

### III. Analysis.

The plaintiff contends that there is not substantial evidence to support the ALJ's finding that she is capable of performing work in the national economy. First,

the plaintiff argues that the ALJ erred in evaluating the severity of her physical and cumulative impairments. Second, the plaintiff argues that the ALJ failed to fully and fairly develop the medical evidence as to her panic attacks. For the following reasons, I disagree.

*A.*

First, the plaintiff argues that the ALJ erred in evaluating the severity of her physical and cumulative impairments and her associated ability to perform work at any exertional level. Specifically, she challenges the ALJ's determinations that she has no severe physical impairment, and that her cumulative impairments are not more limiting.

"An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). The ALJ considered the plaintiff's complaints of back pain, endometriosis, bilateral carpal tunnel syndrome, and incapacitating migraines according to this standard, but ultimately determined that none were severe impairments. (R. at 21.)

The plaintiff's complaints are not supported by the medical evidence. The record indicates that the plaintiff has no severe impairment related to her back pain. (R. at 21.) While an X ray in November 1999, showed a very small spur on the inferior left vertebral L4 body, the plaintiff's physical evaluations were unremarkable, and her X ray showed well-preserved disc space. The record demonstrates that the plaintiff's back pain was a transient condition that resolved with treatment. Two years after her initial X ray, the plaintiff denied suffering from any back pain, joint pain, stiffness, or swelling. (R. at 21.) Furthermore, the plaintiff has never been to the emergency room for debilitating pain or been referred to an orthopedic specialist. (*Id.*)

The record also indicates that the plaintiff does not suffer from a severe impairment related to migraine headaches. (*Id.*) The plaintiff sought treatment for her headaches only on two occasions, on August 7, 2001, and September 5, 2002. As with her back pain, the plaintiff's migraines presented a transient condition that resolved with treatment. The plaintiff reports that her headaches are better since she began taking medication and stopped drinking caffeine. (R. at 133, 154.)

The ALJ determined the record does show that the plaintiff has endometrium. (*Id.*) However, the abdominal pain about which the plaintiff complained was a symptom of menopause, and not the result of her endometriosis. (R. at 201.) In

addition, the plaintiff's abdominal pain was a transient condition that resolved with treatment. (R. at 21.)

The ALJ also found that the plaintiff's bilateral carpal tunnel syndrome is not a severe impairment. (*Id*.) The plaintiff had carpal tunnel surgery in December 1999, and the follow-up visit report shows that she was doing well. (R. at 171.) In addition, the plaintiff reports crocheting, sewing, playing games, and participating in other activities that show improved hand use. (R. at 72.)

The only evidence to support a finding that the plaintiff suffers from severe physical impairments is the plaintiff's own testimony, and the ALJ determined that her allegations were not totally credible. (R. at 24.) As previously discussed, the plaintiff's complaints were not supported by the objective evidence. In addition, the plaintiff's testimony was contradictory. For example, she reported that she stopped working as a result of her non-exertional impairments, not because of her physical impairments. (R. at 99.) Credibility determinations are for the ALJ, not this court, to make. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). For these reasons, I find that the ALJ did not err in finding that the plaintiff does not suffer from a severe physical impairment.

Next, the plaintiff claims that the ALJ erred in evaluating the severity of her cumulative impairments. The Act requires that "the combined effect of all of the

individual's impairments" be considered "without regard to whether any such impairment, if considered separately[,]" would be sufficiently severe. 42 U.S.C.A. § 423(d)(2)(B). The rule in this circuit is that "in determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments." *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989). The ALJ must also adequately explain his or her evaluation of the combined effects of multiple impairments, in keeping with the ALJ's obligation to explicitly indicate the weight to be given to the evidence. *See id.*

The ALJ did consider the combined effect of the plaintiff's alleged impairments in this case. The ALJ reviewed the entire record regarding the plaintiff's physical limitations, and found no severe impairment. (R. at 22.) The ALJ did determine that the plaintiff's anxiety and depression are severe non-exertional impairments. (R. at 21.) Then, the ALJ considered the combined effect of the plaintiff's limitations. This is evident not only from the ALJ's opinion, but also from his questions to the VE. (R. at 21, 311.) The ALJ ultimately determined that only the plaintiff's non-exertional limitations compromise her ability to work. (R. at 23.) It is clear that the ALJ understood his responsibility to consider the plaintiff's claims of physical impairments in connection with her mental impairments. I find that the ALJ did not err in this regard.

*B.*

Second, the plaintiff argues that the ALJ failed to fully and fairly develop the medical evidence as to her panic attacks. In social security administrative proceedings, "it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." *Sims v. Apfel*, 503 U.S. 103, 109 (2000) (citations omitted). The applicable regulations provide, in pertinent part, that

> [t]he medical evidence . . . must be complete and detailed enough to allow us to make a determination about whether you are disabled . . . . It must allow us to determine—
>
> (1) The nature and limiting effects of your impairment(s) for any period in question;
>
> (2) The probable duration of your impairment; and
>
> (3) Your residual functional capacity to do work-related physical and mental activities.

20 C.F.R. §§ 404.1513(d), 416.913(d) (2004).

The record provides the following evidence as to the plaintiff's anxiety. The plaintiff reported that she has had "bad nerves" since the age of seventeen. (R. at 153.) She has tried both Ativan and Valium, but neither seemed to have been particularly effective. (*Id.*)

On November 15, 2001, the plaintiff visited J. Judson Booker, III, M.D., complaining of anxiety attacks. (R. at 153-54.) Dr. Booker treated her with Zoloft.

- 8 -

(*Id.*)  A few days later, on November 24, 2001, the plaintiff went to the emergency room reporting that she was feeling very anxious and was unable to be alone.  (R. at 116-17.)  The physician's clinical impression was of anxiety and panic attacks.  (*Id.*)  The plaintiff was treated with Ativan and was released in under an hour.  (R. at 118.)  On December 11, 2001, the plaintiff saw Dr. Booker for a follow-up visit.  She reported that while she still had occasional bouts with anxiety, they resolved quickly with Ativan.  (R. at 149.)  The plaintiff stated that she was feeling remarkably better, and was "on the road to recovery."  (*Id.*)  Dr. Booker agreed.  (*Id.*)  On February 6, 2002, the plaintiff reported to Dr. Booker that although she continued to have some feelings of panic, she was feeling "95% better" and her panic attacks, anxiety, and depression were "dramatically better."  (R. at 147.)   In April 2002, Dr. Booker reported the plaintiff was doing well, the anxiety attacks were lessened, and her mood and affect revealed no depression, anxiety, or agitation.  (R. at 133-35.)

On September 18, 2002,   State Agency expert Hugh Tenison, Ph.D., completed a psychiatric review technique form ("PRTF") and concluded that the plaintiff does not have a severe psychiatric impairment.  (R. at 155-77.)  Almost one year later, Sheila C. Wendler, M.D., performed a physiological evaluation of the plaintiff and diagnosed her with "Generalized Anxiety Disorder" and "Major Depression Disorder, Single Episode, Moderate, with Anxiety."  (R. at 236.)  The plaintiff reported never

having been hospitalized or treated by a psychiatrist for these disorders. (R. at 235.) Dr. Wendler reported a Global Assessment of Functioning ("GAF")[1] of fifty-six. (R. at 236.)

Finally, the ALJ considered the plaintiff's own testimony. He concluded that her complaints were not entirely credible, stating that the plaintiff's "description of her limitations appears inconsistent and out of proportion to the documented objective medical findings in the record, and her testimony regarding her restrictions is contradictory to other evidence of record." (R. at 22.) For example, he noted that the plaintiff drove herself to her hearing, though she testified that she cannot drive alone because she may have a panic attack. (*Id.*) Based on this information, the ALJ determined that the plaintiff does suffer from a severe non-exertional impairment related to her panic attacks, but it is not as severe as the plaintiff asserts. (R. at 22.)

This review of the evidence demonstrates that the ALJ did fully develop the record pertaining to the plaintiff's panic attacks. The record indicated the nature and limiting effect of the plaintiff's depression and panic attacks. It demonstrated the duration of those impairments. Furthermore, it provided the information necessary

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score below 50, moderate difficulty in functioning between 50 and 60, some difficulty in functioning between 60 and 70, and no more than slight impairment in functioning between 70 and 80. Superior functioning is represented by 100. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

for the ALJ to determine the plaintiff's RFC— the ALJ specifically indicated that the plaintiff requires about fifteen minutes every two to three weeks to be "off tasks" after a panic attack. The record contains sufficient evidence to support the ALJ's determination that the plaintiff is not disabled.

## IV. Conclusion.

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

DATED: June 23, 2005

/s/ JAMES P. JONES
Chief United States District Judge

- 11 -

Case 1:04-cv-00016-JPJ-PMS   Document 13   Filed 06/23/05   Page 11 of 11   Pageid#: 54